---

(63 App. Div. 597.)

### LAPHAM v. SCOFIELD.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. RIGHTS OF MORTGAGEE—PRIOR LEASE—ALIMONY—RENTS AND PROFITS.

Where a mortgage was executed under a decree awarding alimony to mortgagor's wife, to secure such alimony, the rights of the mortgagee were subsequent to those of an assignee of a lease executed prior to the mortgage, and of which the mortgagee had actual notice at the time the mortgage was executed.

2. SAME—FORECLOSURE—RIGHT TO PRESENT VALUE OF ANNUITY.

Where a mortgage to secure installments of alimony provided that on default in any installment the mortgagee could foreclose, and, out of the moneys arising from the sale, retain the amount then due, and that the surplus should be paid into court subject to such order as the court might make to secure installments of alimony thereafter to accrue, the mortgagee had no right on the sale of the premises to have the present value of the installments, as computed according to mortality tables, paid to her, but was only entitled to such amount as might be due at the time of the sale, and the balance should be invested according to the provisions of the mortgage.

Appeal from special term, Yates county.

Action by Kathleen H. M. B. Lapham against Reuben A. Scofield, as receiver, etc. From a decree in favor of plaintiff, defendant appeals. Modified.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

George S. Sheppard, for appellant.
John Van Voorhis, for respondent.

RUMSEY, J. This action was brought to reform a mortgage made by George H. Lapham to the plaintiff, and to foreclose it as reformed. Several defendants other than the appellant answered in the action, but against all these defendants, as well as against the appellant, the plaintiff succeeded. None of the other defendants, however, has appealed; and the case comes here solely upon the objections raised by Scofield, the appellant, who is the receiver of the First National Bank of Penn Yan. The facts, which are substantially undisputed, are that the plaintiff was the wife of George H. Lapham; that on the 5th of August, 1898, she had begun an action against him, asking for a separation, and for a proper and suitable allowance for her maintenance and support; that a trial was had in that action, and on the 19th of June, 1899, a judgment was entered decreeing a separation, and requiring Lapham to pay to the plaintiff the sum of $600 annually for her support during her life, in equal quarterly installments, and to deliver to her a mortgage upon his homestead in the village of Penn Yan to secure the payment of the allowance. On the 26th of June, 1899, Lapham executed the mortgage, intending to comply with the provisions of the judgment. As a matter of fact, however, the property intended to be covered by the mortgage was not all included in the description in the mortgage; a portion of the land being left out by mistake. An installment of this alimony, of $150, which fell due on the 1st of January, 1900, and another falling due on the 1st of April in the same year, were not paid; and thereupon this action was brought to reform the mortgage to change the description so as to include all the land intended to be covered by it, and to foreclose it as reformed. The appellant was the receiver of the First National Bank of Penn Yan, of which bank Lapham had been president for many years. In the month of February, 1899, Lapham, who then lived upon the premises afterwards mortgaged, rented them to Emma L. Allen for a term of three years, by a lease executed on that day. Mrs. Allen was in possession of the property under this lease at the time the mortgage was made. Before the execution of the mortgage, Lapham, who was heavily indebted to the bank, executed and delivered to Scofield, as receiver of the bank, an assignment of the lease, transferring all his right, title, and interest in the lease, and Scofield was in possession of the lease under that assignment at the time this action was begun. The complaint of the plaintiff alleged that the lease and Scofield's interests under it were subordinate to her rights as mortgagee. This was denied by Scofield, who insisted that his interests in the lease, being prior to

Mrs. Lapham's mortgage, were not.subject to it. In this regard the referee found against him, and held that he was bound to account for all the rents which he had received, except such as he had in good faith paid over to the treasurer of the United States. He was also charged with a certain portion of the costs of the action. The report of the referee fixed the value of the plaintiff's interests in the premises, estimated upon the basis of the probability of the extent of her life according to the Northampton tables, at $5,500. He directed that the premises should be sold; that certain prior liens and incumbrances should be paid; that so much of the annuity as had previously become due, and had not been paid, should be paid; that there should then be paid to the plaintiff the sum of $5,500, found by him to be the value of her mortgage interest; and out of the surplus then remaining, if any, certain other payments were directed to be made, which it is not necessary to consider.

The appellant's objection is, in the first place, to so much of the judgment thus entered as requires him to account for the rents which he had received, and to pay certain of the disbursements of the action; and, in the second place, to that part of the judgment which requires the payment to the plaintiff of the sum of $5,500, as the present value of her annuity, in view of the probabilities of her life as shown by the Northampton tables.

The lease of the premises to Mrs. Allen, which was in evidence, was dated on the 22d of February, 1898. It was made to appear by an affidavit of Mrs. Lapham, made on the 5th day of May, 1899, that she knew on that date that Lapham had rented his homestead in Penn Yan at an annual rental of $720, and that the tenant was Mrs. Allen. There was no testimony whatever tending to show that the lease had not been delivered to Mrs. Allen at its date, or that she was not in possession of the premises after the lease was given to her, and down to the time of the trial of the action; nor was there any testimony or suggestion either that the lease was fraudulent against the prospective claims of the plaintiff, or that the assignment was made with the intent to hinder, delay, or defraud the plaintiff in the collection of her annuity. In view of these facts, we are unable to see by what process of reasoning the learned referee reached the conclusion that this lease was subordinate to the plaintiff's mortgage. It is quite true that the plaintiff was entitled to her support from her husband, but it is equally true that at the time this mortgage was given she had no right to any particular sum for her annuity, nor did she have a lien upon any portion of Lapham's property to secure what she might thereafter recover. He was the owner of the property, and he had the right to do whatever he saw fit with it, and there was no legal reason why he should not rent it if he wished to do so. The fact that the lease bore date on the 22d of February, 1899, was of itself some evidence that it was executed upon that day (Purdy v. Coar, 109 N. Y. 448, 17 N. E. 352, 4 Am. St. Rep. 491), in the absence of something tending to show that it was not made and delivered at the time it bore date.

It is said that there was no evidence that Scofield was a holder in good faith of the assignment. Such proof was not necessary. It ap-

peared that Mrs. Lapham knew that this lease was in existence, and that Mrs. Allen was the tenant under it. This was brought to her notice, and was sworn to by her in May, 1899, in an affidavit made for the purpose of giving to the court information upon which to base her award for alimony, and which has been referred to above. As she had at that time actual notice of the existence of the lease, she could not have been a holder in good faith as against the rights of Mrs. Allen, or the rights of any one who was entitled to receive the rents under that lease. It appears from the complaint that the mortgage was executed and delivered on the 2d of September, 1899, although it appears to have been dated the 19th of June, 1899. The execution of the mortgage at that time was admitted. So, upon the facts as they appear, there is no question that Scofield was actually in possession of this assignment of the rent several weeks before this mortgage was executed. As there is no claim that the assignment was fraudulently made, and as Lapham was indebted to the bank in a sum very much larger than that which the assignment was given to secure, no possible reason is seen why his ownership of this rent should be held to be subordinate to Mrs. Lapham's rights under her mortgage. That provision of the judgment, therefore, which requires Scofield to account for the rents which he has received by virtue of his assignment, is improper, and should clearly be reversed.

We think, too, that so much of the judgment as fixes the value of Mrs. Lapham's interest at $5,500, and requires the payment of that sum to her as the present value of her annuity, was also erroneous, and should be reversed. The mortgage was given as security for the payment of the installments of the annuity at the times fixed in the decree, and according to its terms. These installments were $150 each, payable on the 1st day of October, 1899, and $150 on the 1st days of each January, April, July, and October thereafter. The mortgage further provided that for any default in the payment of these sums, or any of them, it should be lawful for Mrs. Lapham to foreclose the mortgage and sell the premises, and out of the moneys arising from the sale to retain the amount then due, with interest, together with the costs and charges of making such sale, and the surplus, if there should be any, should be paid by her into court, to be invested or deposited by the court, and held subject to such order or direction as the court might at any time deem it proper to make, to secure the payment of the installments of alimony thereafter to accrue. This was the full extent of the rights of the plaintiff under her mortgage. In no event, under the provisions of the mortgage, could Mrs. Lapham be entitled to anything more than what might be due at the time of the sale. It is quite clear from the provisions of the mortgage that it was never intended that the present value of her annuity should be paid to her under any circumstances. Her right to the annuity ended with her life. When she died, all her interest in the premises, or in any surplus there might be if there had been a foreclosure, ceased; and the surplus thereafter should be paid to Lapham, or to those who by assignment or otherwise were entitled to his interest. Just what interest the appellant might have in that surplus is not certain, as Mrs. Allen's lease had been put an end to

by the judgment of foreclosure, but it is very possible that he, as receiver, might have a claim against the surplus for the value of the rents which he might be deprived of by the cancellation of the lease. But it is unnecessary to discuss here the interest which Scofield or any one else might have in that surplus. It is sufficient to say that there is no authority in the mortgage to fix Mrs. Lapham's present value of the annuity, but that all she is entitled to receive out of the proceeds of the sale is what was due her at the time of the sale upon her annuity, and that whatever remains by way of surplus after making all the payments to which the parties to the action were entitled is to be paid into court, to await its further order, and, when that surplus shall have been ascertained, then these rights can be adjudicated intelligently.

The result, therefore, is that the judgment appealed from must be modified by striking out so much thereof as requires the appellant, Scofield, to account for the rents received by him under this lease, and by directing that the surplus, after making the payments due upon prior liens, and paying to Mrs. Lapham the amount due to her at the time of the commencement of the action, shall be paid into court, to await the further order of the court, and also by vacating so much of the judgment as requires the appellant, Scofield, to pay one-half of the referee's fees and the fees of the stenographer, and as modified affirmed, with costs to the appellant against the respondent. All concur.

---

(64 App. Div. 9.)

BROWN v. DUTCHESS COUNTY MUT. INS. CO. OF POUGHKEEPSIE.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

2. SAME—CONTRACT TO INSURE.
　　Where plaintiff agreed with defendant's agent that he should renew the insurance on plaintiff's property when it expired, and that the insurance was to be taken out with the defendant company if the rates were no higher, otherwise to be taken in some other company, there was no contract with defendant for insurance, and an action will not lie therefor after loss, and a failure of the agent to renew the policy.

3. SAME—EVIDENCE—DECLARATIONS OF AGENT—TERMINATION OF AGENCY.
　　In an action to recover on an alleged parol agreement for insurance, it was error to admit declarations of the defendant's agent as to the contract for insurance, where he was not the defendant's agent when the declarations were made.

Appeal from trial term, Erie county.